IN RE the PATERNITY OF TIFFANY B.: KATHRYN B. and Outagamie County Child Support Agency, Petitioners-Respondents,

v.

SHELDON S., Respondent-Appellant.

Court of Appeals

*No. 92–1897. Submitted on briefs December 29, 1992.—Decided January 20, 1993.*

(Also reported in — N.W.2d —.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *Leonard D. Kachinsky* of *Kachinsky Law Offices* of Neenah.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Traycee England,* assistant corporation counsel, of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Sheldon S. appeals a default judgment issued against him. He argues that the trial court erred by granting a default judgment under sec. 767.465(2)(a), Stats., when his attorney, but not he, appeared at trial. Additionally, he argues that the trial court erred by ordering him to pay the actual costs of the child support agency's expert witness. We affirm the trial court on both issues.

Kathryn B. and the Outagamie County Child Support Agency filed a petition claiming that Sheldon was Tiffany's father. Sheldon was personally served and made an initial appearance, where he requested time to get an attorney. Three different attorneys represented Sheldon at various times before trial. During this time, court-ordered blood tests were done and indicated that the probability of Sheldon's paternity was 99.97%.

On the day of trial, Sheldon's attorney appeared, but Sheldon did not. Over objection, the trial court granted a default judgment against Sheldon and rendered a judgment of paternity. Additionally, the court required Sheldon to reimburse the child support agency $985 for the blood test expert witness who appeared and was prepared to testify at trial.

866

The trial court based its default judgment on sec. 767.465(2)(a), Stats., which reads in part:

> If a respondent is the alleged father and fails to appear at the first appearance, unless the first appearance is not required under s. 767.457(2), scheduled blood test, pretrial hearing or trial, the court or family court commissioner shall enter an order adjudicating the respondent to be the father and appropriate orders for support, legal custody and physical placement.

Statutory interpretation is a question of law, which appellate courts review independently of the trial court's conclusion. *State v. Wittrock*, 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984). To determine the legislative intent, we first look to the language of the statute itself, and, if it is clear on its face, the inquiry ends. Only if the statute is ambiguous will we examine extrinsic sources of legislative intent. *In re J.W.T.*, 159 Wis. 2d 754, 761, 465 N.W.2d 520, 523 (Ct. App. 1990). A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. *Robinson v. Kunach*, 76 Wis. 2d 436, 444, 251 N.W.2d 449, 452 (1977). Whether interpreting or construing a statute, appellate courts do so in a way as to avoid absurd or unreasonable results. *Voss v. Middleton*, 162 Wis. 2d 737, 749–50, 470 N.W.2d 625, 629–30 (1991).

The clear language of sec. 767.465(2)(a), Stats., requires that the respondent appear in person at the first appearance, scheduled blood tests, pretrial hearing and trial. It does not provide for a substitute appearance at any of these appearances and makes an exception only for not attending the first appearance by filing a waiver

statement. If we were to construe this section to allow a respondent to not appear in person at trial and appear only through an attorney, then the respondent could also fail to appear in person at a scheduled blood test and appear only through an attorney. This would cause an absurd, unreasonable result that the legislature surely did not intend when enacting sec. 767.465(2)(a). Therefore, we conclude that the section is not ambiguous and its plain language requires the respondent to appear in person at a paternity trial. Because the statute states that the court "shall" enter an order adjudicating the non-appearing respondent to be the father, the trial court was correct in granting a default judgment against Sheldon when he did not appear in person.

Sheldon also argues that the trial court erroneously exercised its discretion by ordering him to pay the expert witness costs. Section 767.51(3), Stats., states in part that a paternity judgment

> may direct the father to pay or contribute to the reasonable expenses of the mother's pregnancy and confinement during pregnancy and may direct either party to pay or contribute to the costs of blood tests, attorney fees and other costs.

The expert witness cost was $985. Sheldon argues that sec. 814.04(2) , Stats., governing costs, allows for expert witness fees only up to $100. We disagree.

The expert witness costs could be included as the costs of the blood tests or other costs. In either case, under sec. 767.51(3), Stats., the trial court has discretion to order these costs paid by either party. Section 767.51(3) is in conflict with sec. 814.04(2), Stats. Section 767.51(3), specifically related to costs incurred in a paternity action, is a more specific statute than sec.

814.04, Stats., which deals with items of costs in civil actions generally. Where two conflicting statutes apply to the same subject, the more specific statute controls. *AFSCME Local 1901 v. Brown County*, 146 Wis. 2d 728, 735, 432 N.W.2d 571, 574 (1988). To illustrate, we note that sec. 814.04(1) deals with attorney fees and limits them to $100. Under Sheldon's argument, attorney fees awarded under sec. 767.51(3) would be limited to $100. Clearly, this was not the legislature's intent in enacting sec. 767.51(3). Neither did the legislature intend to limit expert witness costs in this manner.

Given that Tiffany is an AFDC recipient, that Sheldon is the only person Tiffany is alleging paternity against, that the blood test costs would not have been incurred had Sheldon not contested paternity, and that a default judgment was entered against Sheldon, the trial court properly exercised its discretion by assessing the expert witness costs against Sheldon.

*By the Court.*—Judgment affirmed.